UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>ALL PETROLEUM-PRODUCT CARGO ABOARD THE BELLA WITH INTERNATIONAL MARITIME ORGANIZATION NUMBER 9208124,<br><br>ALL PETROLEUM-PRODUCT CARGO ABOARD THE BERING WITH INTERNATIONAL MARITIME ORGANIZATION NUMBER 9149225,<br><br>ALL PETROLEUM-PRODUCT CARGO ABOARD THE PANDI WITH INTERNATIONAL MARITIME ORGANIZATION NUMBER 9105073,<br><br>  --and--<br><br>ALL PETROLEUM-PRODUCT CARGO ABOARD THE LUNA WITH INTERNATIONAL MARITIME ORGANIZATION NUMBER 9208100,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil A. No. 20-1791<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## UNITED STATES' VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

COMES NOW, Plaintiff the United States of America (the "United States"), by and through the United States Attorney for the District of Columbia, which brings this verified complaint for forfeiture in a civil action *in rem* against the defendant properties, namely all petroleum-product cargo aboard: the Bella with International Maritime Organization ("IMO") number 9208124 ("Defendant Property 1"), the Bering with IMO number 9149225 ("Defendant

Property 2"), the Pandi with IMO 9105073 ("Defendant Property 3"), and the Luna with IMO number 9208100 ("Defendant Property 4") (collectively, the "Defendant Properties"), and alleges as follows.

### NATURE OF ACTION AND THE DEFENDANT IN REM

1.      This *in rem* forfeiture action arises out of an investigation by Homeland Security Investigations ("HSI") and the Federal Bureau of Investigation ("FBI"). Specifically, the United States is investigating Iran's transportation and sale of oil products to benefit sanctioned Iranian entities. This action seeks to forfeit petroleum that is aboard four ships en route from Iran and destined for Venezuela.

2.      The Defendant Properties are subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(G)(1), as foreign assets: (i) of the Islamic Revolutionary Guard Corps ("IRGC"), a designated foreign terrorist organization, which has engaged in planning and perpetrating federal crimes of terrorism as defined in 18 U.S.C. § 2332b(g)(5) against the United States, citizens or residents of the United States, or their property; or (ii) affording a person a source of influence over the IRGC.

### JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355.

4.      Venue is also proper within this judicial district pursuant to 28 U.S.C. § 1355(b)(2).

5.      Pursuant to 14 U.S.C. § 522(a) and 28 U.S.C. § 2461(b), this court has jurisdiction for property subject to forfeiture on the high seas.

### FACTS GIVING RISE TO FORFEITURE

**A.      IMPORTANCE OF PETROLEUM AND SHIPPING INDUSTRIES TO THE IRGC**

6.      On September 24, 2012, the U.S. Department of the Treasury submitted its report to Congress, as required by the Iran Threat Reduction and Syria Human Rights Act of 2012

("ITRSHRA"), informing Congress that the Department of the Treasury determined that the National Iranian Oil Company ("NIOC") was an agent or affiliate of the IRGC.

7.     In 2014, the Department of the Treasury further noted that under the current Iranian regime, the IRGC's influence has grown within NIOC. For example, on August 3, 2011, Iran's parliament approved the appointment of Rostam Qasemi, a Brigadier General in the IRGC, as Minister of Petroleum. Prior to his appointment, Qasemi was the commander of Khatam Al-Anbia Construction Headquarters, a construction and development wing of the IRGC that generates income and funds operations for the IRGC. Even in his new role as Minister of Petroleum, Qasemi has publicly stated his allegiance to the IRGC. As the IRGC has become increasingly influential in Iran's energy sector, Khatam Al-Anbia has obtained billions of dollars' worth of contracts with Iranian energy companies, including NIOC, often without participating in a competitive bidding process. *See* https://ir.usembassy.gov/our-relationship/official-reports/treasury-report-nioc-nitc/.

8.     On April 8, 2019, the President designated the IRGC as a Foreign Terrorist Organization.   The designation noted that the IRGC actively finances and promotes terrorism. On April 15, 2019, the Secretary of State designated the IRGC, including the IRGC-QF, as Foreign Terrorist Organization.   *See* https://www.state.gov/designation-of-the-islamic-revolutionary-guard-corps/.   According to the Department of the Treasury, the IRGC and its major holdings have a dominant presence in Iran's commercial and financial sectors, controlling multi-billion dollar businesses and maintaining extensive economic interests in the oil industry and the profits from these activities support the IRGC's full range of nefarious activities, including the proliferation of WMD and their means of delivery, support for terrorism, and a variety of human rights abuses, at home and abroad. *See* https://home.treasury.gov/news/press-releases/sm703.

9.      On June 7, 2019, the Department of the Treasury's Office of Foreign Assets Control ("OFAC") took action against Persian Gulf Petrochemical Industries Company ("PGPIC") for providing financial support to Khatam al-Anbiya. PGPIC is Iran's largest and most profitable petrochemical holding group. PGPIC and its group of subsidiary petrochemical companies hold 40 percent of Iran's total petrochemical production capacity and are responsible for 50 percent of Iran's total petrochemical exports "By targeting this network we intend to deny funding to key elements of Iran's petrochemical sector that provide support to the IRGC," said Treasury Secretary Steven T. Mnuchin. "This action is a warning that we will continue to target holding groups and companies in the petrochemical sector and elsewhere that provide financial lifelines to the IRGC."

10.      As recently as January 23, 2020, OFAC described NIOC as "an entity instrumental in Iran's petroleum and petrochemical industries, which helps to finance Iran's Islamic Revolutionary Guard Corps-Qods Force ("IRGC-QF") and its terrorist proxies. Iran's petroleum and petrochemical industries are major sources of revenue for the Iranian regime and funds its malign activities throughout the Middle East." https://home.treasury.gov/news/press-releases/sm885.

11.      OFAC has also noted that crude oil and condensate sold by the IRGC-Quds Force originates with NIOC, and that the IRGC-QF relies on persons embedded within the shipping industry to keep this oil moving by ensuring that vessel insurance and registration are in order, among other things. Furthermore, National Iranian Tanker Company ("NITC") vessels have been used in IRGC-QF-run operations. *See* https://home.treasury.gov/news/press-releases/sm767.

12.      Since September 2018, the IRGC-QF has moved oil through a sanctioned shipping network, which features dozens of ship managers, vessels, and facilitators. This complex network of intermediaries enables the IRGC-QF to obfuscate its involvement in selling Iranian oil.

13.     OFAC concluded that in spring 2019 alone, one IRGC-QF-led network employed more than a dozen vessels to transport nearly 10 million barrels of crude oil, and has taken steps to hide Iranian, IRGC and NIOC involvement in certain transactions. These shipments, taken collectively, sold for more than half a billion dollars. The same network also sold nearly four million barrels of condensate and hundreds of thousands of barrels in gas oil, bringing in another quarter billion dollars.

14.     The profits from these activities support the IRGC's full range of nefarious activities, including the proliferation of weapons of mass destruction and their means of delivery, support for terrorism, and a variety of human rights abuses, at home and abroad. "The IRGC systemically infiltrates critical sectors of the Iranian economy to enrich their coffers, while engaging in a host of other malign activities," said then-Under Secretary for Terrorism and Financial Intelligence Sigal Mandelker.  https://home.treasury.gov/news/press-releases/sm703.

## B.     BACKGROUND ON ENTITIES INVOLVED IN PRESENT SCHEME AND THEIR PRIOR RELEVANT ACTIVITIES

15.     A confidential reliable source stated that Mahmoud Madanipour was the Iran-based individual who arranged the shipments of the Defendant Properties on behalf of Mobin International Ltd. ("Mobin International").  According to a confidential reliable source, Mahmoud Madanipour is affiliated with the IRGC.

16.     Mobin International changed its name within the past two years. Mobin International previously described itself as an Iranian petroleum company, operating under the name Rahbaran Petro Mobin Kish.

17.     Mobin International and/or Madanipour are also affiliated and/or associated with another U.A.E.-based trading company ("Company 1").

18.     According to a confidential reliable source, Mobin International is associated with bank accounts also used for IRGC funds.

19.     A confidential reliable source has also stated that, during planning discussions regarding sanctions evasion, Madanipour said that any business conducted by foreign entities would require IRGC consent. Madanipour also said that in order to conceal IRGC involvement, the government of Iran had officially retired numerous IRGC leaders and then placed them at the heads of companies in key Iranian industrial sectors.

20.     Madanipour, through Mobin International, works closely with NIOC and entities associated with NIOC and the IRGC, and has taken steps to conceal Iranian, IRGC, and NIOC involvement in previous petroleum-product transactions. For example:

a.     On or about March 17, 2019, Mobin International confirmed with Naftiran Intertrade Company Ltd.—a Swiss-based Iranian oil trading company designated by OFAC for its connections to NIOC—an agreement for storage in Malaysia and UAE. The letter stated, "Our partner company who owns several Tankers and one Bunkering Company (Owner) needs to be secured of any risk of sanctions on person, assets and licenses in the future. Therefore, we are setting up a new joint venture ship management company in one of the GCC countries to handle all our transshipments of risky oil business."

b.     On or about April 7, 2017, Madanipour corresponded with an associate, discussing a proposal to sell crude oil to a company in China. The associate asked a question on behalf of the Chinese, "[t]hey want to know if we can make the product origin not Iran as they are worried of sanctions - is Oman option there as it is not part of OPEC?" Madanipour responded, "Yes we will provide from Oman."

i.      The associate asked, "Can the make payment to other countries no[t] Iran but maybe to any of the GCC countries like Oman or Dubai or which would be ok for you."

ii.     Madanipour responded, "We can get payment in Oman, UAE, Turkey, Italy and Germany."

c.      On or about July 9, 2017, an employee in the product operation division at NIOC contacted Madanipour for details on a gasoline contract. The request was directed to the attention of Rahbaran Petro Mobin Kish and included numerous other NIOC employees.

d.      On or about July 9, 2017, Madanipour caused a ship-to-ship transfer of one million barrels of oil supplied by the NIOC from Kharg Island, Iran.

21.     As part of its role in the scheme described, Mobin International has also altered documents to camouflage the true nature of petroleum-product sales. For example, on or about July 26, 2018, Madanipour discussed Mobin International's right to issue and switch a bill of lading relating to a NITC shipment, and Madanipour has documented the cost to "[s]witch documents" to be $30,000.00.

22.     A letter dated April 16, 2020, sent to the owners of another ship ("Vessel 1"), referenced a transaction between NIOC and Mobin International. The letter stated that the charterer could not obtain the original bills of lading, and thus could not switch: (1) the true bills of lading from NIOC to fraudulent documents purportedly from the Iraqi State Organization for Marketing of Oil; and (2) the consignee from Mobin International to the name of another company. The letter sought to indemnify each party should the vessel be arrested or detained as a result of the inability to switch the bills of lading. Additionally:

a.       a manifest dated March 19, 2020, lists the National Iranian Oil Products Distribution Company ("NIOPDC") as the shipper of gasoline onboard Vessel 1; and

b.       subsequently, the Pandi, one of the ships used in the current voyage, engaged in a ship-to-ship transfer with Vessel 1 in the Port Khalid, Sharjah, UAE to take on the Iranian gasoline.

23.       On or about May 20, 2019, Madanipour learned that Mobin International was allegedly being sued by NIOC for failing to pay its debts and that Madanipour was being sued by the Persian Gulf Petrochemical Company and others for failing to pay his debts.

## C.       CURRENT VOYAGE ARRANGED BY MOBIN INTERNATIONAL FROM IRAN TO VENEZUELA

24.       Four petroleum tankers, the Bella, the Bering, the Pandi, and the Luna, are in the process of transporting Iranian gasoline (i.e., the Defendant Properties) to Venezuela.

25.       A reliable confidential reliable source revealed that in January 2020, Company 1 requested that the owner of the Pandi carry gasoline from Iran to the UAE. The charter for this voyage was fixed on January 3, 2020. The charter party was Company 1, represented by Madanipour, and the shipper was the NIOPDC. Madanipour subsequently changed the documents to reflect that Mobin International, as opposed to Company 1, was responsible for this voyage.

26.       The Bella, Bering, Pandi, and Luna were ultimately contracted by Mobin International to transport the Defendant Properties. Mobin International selected Seawaves Shipping, an Iranian company, to act as its agent.

27.       According to a confidential reliable source, Seawaves Shipping is associated with the IRGC-QF.

28.     A Bill of Lading, dated January 10, 2020, documented the gasoline onboard the Pandi, and listed the shipper as NIOC. The consignee was listed as "To Order of Shipper (NIOPDC) Account of Mobin International Ltd."

29.     On or about February 27, 2020, Company 1 invoiced a company called The Avantgarde Group for a $14.9 million cash payment for the sale of gasoline aboard the Pandi. Such invoicing was consistent with a pre-existing relationship between Company 1 and Mobin International. For example, on or about February 4, 2018, an Emirati trading company sent an account statement that reflected "[Company 1] (on behalf of Mobin)" transferred funds to a "NITC account."

30.     The Avantgarde Group has previously been connected to the IRGC.

        a.     The Avantgarde Group has received payments from Mohammad Saeed Al Aqili and the Al Aqili Group. On April 29, 2014, OFAC designated Mohammad Saeed Al Aqili and the Al Aqili Group, for assisting the Iranian regime in selling oil in evasion of U.S. trade/economic sanctions. OFAC noted in the designation that the Al Aqili Group arranged oil sales for the IRGC and facilitated the circumvention of oil sanctions by disguising the oil's origin.

        b.     Additionally, ACS Trading LLC is based in UAE and is part of the Avantgarde Group. ACS Trading facilitated the purchase of Grace 1, an IRGC-controlled vessel which was subject to a civil and criminal forfeiture complaint in the United States District Court for the District of Columbia. The IRGC publicly acknowledged that the vessel was operating on its behalf.

31.     Publicly-available satellite tracking data known as the automated identification system ("AIS") revealed that in March 2020, the Pandi visited the Sirus Oil Terminal in Iran. AIS

additionally shows that the Pandi engaged in a ship-to-ship transfer of Defendant Property 1 to the Bella on or about April 17, 2020.

32.     On or about April 18, 2020, the Bella set sail with Defendant Property 1 on board. The certificate of origin and bill of lading for Defendant Property 1 falsely show UAE origin cargo. The documents accurately reflect the charter party as Mobin International. Defendant Property 1 is approximately 302,502 barrels currently on board the Bella, which property was ultimately destined for Venezuela.

33.     On or about April 14, 2020, the Bering entered into an agreement to transport Iranian gasoline for Mobin International. The Bering subsequently on boarded Defendant Property 2 via a ship-to-ship transfer. Defendant Property 2 is approximately 302,522 barrels currently on board the Bering, which property was ultimately destined for Venezuela.

34.     On or about April 14, 2020, the Luna entered into an agreement to transport Iranian gasoline for Mobin International. The Luna subsequently on boarded Defendant Property 4 via two ship-to-ship transfers. Defendant Property 4 is approximately 259,700 barrels currently on board the Luna, which property was ultimately destined for Venezuela.

35.     On or about May 11, 2020, the Pandi entered into an agreement to transport Iranian gasoline for Mobin International. The Pandi subsequently on boarded Defendant Property 3 via a ship-to-ship transfer. Defendant Property 3 is approximately 298,484 barrels currently on board the Pandi, which property was ultimately destined for Venezuela.

36.     A text message between Madanipour and a co-conspirator noted difficulties in the voyage for both the Bella and the Bering. The co-conspirator texted, "the ship owner doesn't want to go because of the American threat, but we want him to go, and we even agreed We will also buy the ship."

## COUNT ONE – FORFEITURE
### (18 U.S.C. § 981(A)(1)(G)(I))

37.      The United States incorporates by reference the allegations set forth in Paragraphs 1 to 36 above as if fully set forth herein.

38.      The IRGC is a designated foreign terrorist organization.

39.      As described above, the Defendant Properties are sources of influence for the IRGC within the meaning of 18 U.S.C. § 981(a)(1)(G)(i).

40.      The Defendant Properties are subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(G)(1), as foreign assets: (i) of the Islamic Revolutionary Guard Corps ("IRGC"), a designated foreign terrorist organization, which has engaged in planning and perpetrating federal crimes of terrorism as defined in 18 U.S.C. § 2332b(g)(5) against the United States, citizens or residents of the United States, or their property; or (ii) affording a person a source of influence over the IRGC.

**PRAYER FOR RELIEF**

WHEREFORE, the United States prays that notice issue on the Defendant Properties as described above; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring that the Defendant Properties be forfeited to the United States for disposition according to law; and that the United States be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: July 1, 2020
      Washington, D.C.

                                  Respectfully submitted,

                                  MICHAEL R. SHERWIN
                                  Acting United States Attorney

                                  By:        */s/ Zia Faruqui*
                                         ZIA M. FARUQUI, D.C. Bar No. 494990
                                         BRIAN P. HUDAK
                                         STUART D. ALLEN, D.C. Bar No. 1005102
                                         Assistant United States Attorneys
                                         555 Fourth Street, NW
                                         Washington, DC 20530
                                         (202) 252-7566 (main line)

                                    *Attorneys for the United States of America*

## **VERIFICATION**

I, Thomas Tamsi, a Special Agent with the Homeland Security Investigations, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing Verified Complaint for Forfeiture *In Rem* is based upon reports and information known to me and/or furnished to me by other law enforcement representatives and that everything represented herein is true and correct.

Executed on this 1st day of July, 2020.


_____*/s/ Thomas Tamsi*_____
Special Agent Thomas Tamsi
Homeland Security Investigations


I, Cindy Burnham, a Special Agent with the Federal Bureau of Investigation, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing Verified Complaint for Forfeiture *In Rem* is based upon reports and information known to me and/or furnished to me by other law enforcement representatives and that everything represented herein is true and correct.

Executed on this 1st day of July, 2020.


_____*/s/  Cindy Burnham*_____
Special Agent Cindy Burnham
Federal Bureau of Investigation

# CIVIL COVER SHEET

JS-44 (Rev. 5/12 DC)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| United States of America | ALL PETROLEUM-PRODUCT CARGO ABOARD THE BELLA WITH INTERNATIONAL MARITIME ORGANIZATION NUMBER 9208124, ET AL. |

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____**
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Zia M. Faruqui, Assistant U.S. Attorney
U.S. Attorney's Office for the District of Columbia
555 Fourth Street, N.W.
Washington, D.C.  20530

ATTORNEYS (IF KNOWN)

Unknown

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- (●) 1 U.S. Government Plaintiff
- ( ) 2 U.S. Government Defendant
- ( ) 3 Federal Question (U.S. Government Not a Party)
- ( ) 4 Diversity (Indicate Citizenship of Parties in item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ( ) 1 | ( ) 1 | Incorporated or Principal Place of Business in This State | ( ) 4 | ( ) 4 |
| Citizen of Another State | ( ) 2 | ( ) 2 | Incorporated and Principal Place of Business in This State | ( ) 5 | ( ) 5 |
| Citizen or Subject of a Foreign Country | ( ) 3 | ( ) 3 | Foreign Nation | ( ) 6 | ( ) 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
**(Place an X in one category, A-N, that best represents your Cause of Action and one in a corresponding Nature of Suit)**

**( ) A.  Antitrust**

- [ ] 410 Antitrust

**( ) B.  Personal Injury/ Malpractice**

- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Medical Malpractice
- [ ] 365 Product Liability
- [ ] 367 Health Care/Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Product Liability

**( ) C.  Administrative Agency Review**

- [ ] 151 Medicare Act

**Social Security**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**Other Statutes**
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 890 Other Statutory Actions (If Administrative Agency is Involved)

**( ) D.  Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**(●) E.  General Civil (Other)        OR        ( ) F.  Pro Se General Civil**

**Real Property**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent, Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**Personal Property**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**Bankruptcy**
- [ ] 422 Appeal 27 USC 158
- [ ] 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- [ ] 535 Death Penalty
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Conditions
- [ ] 560 Civil Detainee – Conditions of Confinement

**Property Rights**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 840 Trademark

**Federal Tax Suits**
- [ ] 870 Taxes (US plaintiff or defendant)
- [ ] 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [x] 690 Other

**Other Statutes**
- [ ] 375 False Claims Act
- [ ] 400 State Reapportionment
- [ ] 430 Banks & Banking
- [ ] 450 Commerce/ICC Rates/etc.
- [ ] 460 Deportation
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions
- [ ] 470 Racketeer Influenced & Corrupt Organization

- [ ] 480 Consumer Credit
- [ ] 490 Cable/Satellite TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes
- [ ] 890 Other Statutory Actions (if not administrative agency review or Privacy Act)

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/Privacy Act* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus – General<br>☐ 510 Motion/Vacate Sentence<br>☐ 463 Habeas Corpus – Alien Detainee | ☐ 442 Civil Rights – Employment (criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loan (excluding veterans) |
| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 740 Labor Railway Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 440 Other Civil Rights<br>☐ 445 Americans w/Disabilities – Employment<br>☐ 446 Americans w/Disabilities – Other<br>☐ 448 Education | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights – Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding ○ 2 Remand from State Court ○ 3 Remanded from Appellate Court ○ 4 Reinstated or Reopened ○ 5 Transferred from another district (specify) ○ 6 Multi-district Litigation ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
18 U.S.C. § 981(a)(1)(G)(1), 14 U.S.C. § 522(a) and 28 U.S.C. § 2461(b)

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23 | **DEMAND $** **JURY DEMAND:** | Check YES only if demanded in complaint YES ☐ NO ☒ |
|---|---|---|---|

| **VIII. RELATED CASE(S) IF ANY** | (See instruction) | YES ☒ NO ☐ | If yes, please complete related case form |
|---|---|---|---|

**DATE:** 07/01/2020        **SIGNATURE OF ATTORNEY OF RECORD**    /s/Zia M. Faruqui

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
**Authority for Civil Cover Sheet**

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and services of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the cover sheet.

**I.**      COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff if resident of Washington, DC, 88888 if plaintiff is resident of United States but not Washington, DC, and 99999 if plaintiff is outside the United States.

**III.**     CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

**IV.**     CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of the case.

**VI.**     CAUSE OF ACTION: Cite the U.S. Civil Statute under which you are filing and write a brief statement of the primary cause.

**VIII.**    RELATED CASE(S), IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should endure the accuracy of the information provided prior to signing the form.