UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALL PETROLEUM-PRODUCT CARGO ABOARD THE BELLA WITH INTERNATIONAL MARITIME ORGANIZATION NUMBER 9208124,<br><br>ALL PETROLEUM-PRODUCT CARGO ABOARD THE BERING WITH INTERNATIONAL MARITIME ORGANIZATION NUMBER 9149225,<br><br>ALL PETROLEUM-PRODUCT CARGO ABOARD THE PANDI WITH INTERNATIONAL MARITIME ORGANIZATION NUMBER 9105073,<br><br>--and--<br><br>ALL PETROLEUM-PRODUCT CARGO ABOARD THE LUNA WITH INTERNATIONAL MARITIME ORGANIZATION NUMBER 9208100,<br><br>Defendants. | Civil A. No. 20-1791<br><br>**UNDER SEAL** |

**GOVERNMENT'S MOTION FOR INTERLOCUTORY SALE**

The United States of America, by and through the Acting United States Attorney for the District of Columbia, hereby moves pursuant to Rule G(7)(b) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the "Supplemental Rules" or "Supp. R.") for an order authorizing the immediate interlocutory sale of property subject to forfeiture in

1

this case, namely, all petroleum-product cargo aboard: the Bella with International Maritime Organization ("IMO") number 9208124 ("Defendant Property 1"), the Bering with IMO number 9149225 ("Defendant Property 2"), the Pandi with IMO 9105073 ("Defendant Property 3"), and the Luna with IMO number 9208100 ("Defendant Property 4") (collectively, the "Defendant Properties"), in order to avoid storage costs. In support of its motions, the government respectfully states as follows:

### A. Background

1. This matter arises from the United States' efforts to seize property and place certain prescribed proceeds from the sale of such property into a statutorily created compensation fund to make payments to a host of victims of terrorism. The fund—created by the U.S. Victims of State Sponsored Terrorism Act, as amended, 34 U.S.C. § 20144 (the "Terrorist Victims Compensation Fund" or "Compensation Fund")—provides compensation to victims of terrorism and is funded largely through the forfeiture activities of the United States.

2. On August 14, 2020, the government announced that it had successfully seized the Defendant Properties. *See* https://www.justice.gov/opa/pr/largest-us-seizure-iranian-fuel-four-tankers.

3. After enforcement of the U.S. forfeiture order, Iran's navy forcibly boarded an unrelated ship belonging to the same owner of the ships previously carrying the Defendant Properties, in an apparent attempt to recover the seized petroleum, but was unsuccessful. U.S. Central Command published a video of the failed Iranian operation. *See* twitter.com/CENTCOM/status/1293678243552395264

4.     The Defendant Properties should arrive into a port in the United States by mid-September.  *See* Attached Declaration.

5.     Once in the United States, the Defendant Properties will be placed in storage pending resolution of the instant matter.

6.     Daily storage costs for the Defendant Properties will quickly make a substantial dent in the value of the Defendant Properties.  *See* Attached Declaration.  Specifically:

   a. The Defendant Properties are valued between $11,500,000 and $40,000,000, depending on the quality of the gasoline and the frequently changing price for gasoline.

   b. Daily storage costs for the Defendant Properties will be approximately $38,000 a day or $1,140,000 per month.

   c. Demurrage costs will be approximately $670,000 for both incoming transit vessels, assuming that at least 10 days of demurrage will occur.

*See* id.

### B.     Request for Interlocutory Sale

7.     This Court has the authority to order interlocutory sale of property subject to forfeiture due to excessive storage costs. Supplemental Rule G(7)(b)(i) provides that, "[o]n motion by a party or a person having custody of the property, the court may order all or part of the property sold" if certain conditions are met. Those conditions include where "the expense of keeping the property is excessive or is disproportionate to its fair market value," or "the court finds other good cause." Supp. R. G(7)(b)(i)(B), (D).

8. If the Court approves interlocutory sale, the Supplemental Rules specify that the sale be made by a "United States agency that has authority to sell the property, by the agency's contractor, or by any person the court designates." Supp. R. G(7)(b)(ii). The sale proceeds will be deposited in an interest-bearing account pending conclusion of the forfeiture action. Supp. R. G(7)(b)(iv).

9. The resulting sale proceeds are then treated as a "substitute res subject to forfeiture in place of the property that was sold" and can be used to satisfy any claims recognized by the Court. Supp. R. G(7)(b)(iv).

10. The government respectfully submits that there is good cause to proceed with an interlocutory sale of the Defendant Properties.

11. The declarant expects at least 10 days of demurrage costs, followed by possibly weeks of storage fees pending the resolution of the instant matter.

12. Courts often approve the interlocutory sale of vehicles subject to forfeiture in order to avoid ongoing storage costs and depreciation. *See, e.g., United States v. 2003 BMW X5 SUV*, No. WDQ-14-0912, 2015 WL 84661 (D. Md. Feb. 24, 2015); *United States v. One 2010 Dodge Ram*, No. SAG-14-1065, 2015 WL 685208 (D. Md. Feb. 18, 2015); *United States v. $1,133,648.97*, No. 07-00175 HG KSC, 2015 WL 687337 (D. Haw. Mar. 11, 2008).

13. Moreover, there is a zero-sum game between these storage expense and the amount of funds terror victims may recover. This alone is reason enough to order an interlocutory sale, which would avoid the accrual of storage costs. *See United States v. Real Prop. Located at 272 Old Montauk Highway*, 298 F.R.D. 43, 52 (E.D.N.Y. 2014) (interlocutory sale ordered in part to ensure that greatest amount of money possible would be available to victims).

4

14. This Court has "considerable discretion" in deciding a request for an interlocutory sale. *United States v. Any & All Funds in UBS AG, Account No. XXXX1138*, 628 F. App'x 296, 297 (5th Cir. 2016).

15. Appellate courts have approved of such sales as long as the "sale procedures were fair and the government adequately publicized the sale." *Id.*

16. Here, the government has already been contacted with requests to purchase the Defendant Properties. The government seeks authority to solicit bids from selected interested purchasers, and if a reasonable offer is made, to promptly sell the defendant properties. If no reasonable offer is received, the government will continue on with its plan to deliver the Defendant Properties to the United States.

17. The government requests that the instant motion be placed under seal, as the Iranian military has already attempted at least one interdiction of the property subject to forfeiture. In order to maintain security of the potential buyer, the government will discretely contact the already known interested buyers.

18. The government's request is uncontested. The only possible claimant to this action, Mohammad Madanipour, has received notice but not filed a claim. The government anticipates the instant action will be resolved via a motion for default judgment.

WHEREFORE, the United States of America respectfully moves that the Court enter the attached Order granting its motion for interlocutory sale of the Defendant Properties.

Dated: August 27, 2020
      Washington, D.C.

Respectfully submitted,

MICHAEL R. SHERWIN
ACTING UNITED STATES ATTORNEY
N.Y. Bar Number 4444188

By: */s/ Zia Faruqui*
    Zia Faruqui, D.C. Bar No. 494990
    Brian Hudak
    Assistant United States Attorney
    United States Attorney's Office
    555 Fourth Street, N.W.
    Washington, D.C.  20530
    zia.faruqui@usdoj.gov
    (202) 252-7117 (Faruqui)