UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ALL PETROLEUM-PRODUCT CARGO )<br>ABOARD THE BELLA WITH )<br>INTERNATIONAL MARITIME )<br>ORGANIZATION NUMBER 9208124, )<br>)<br>ALL PETROLEUM-PRODUCT CARGO )<br>ABOARD THE BERING WITH )<br>INTERNATIONAL MARITIME )<br>ORGANIZATION NUMBER 9149225, )<br>)<br>ALL PETROLEUM-PRODUCT CARGO )<br>ABOARD THE PANDI WITH )<br>INTERNATIONAL MARITIME )<br>ORGANIZATION NUMBER 9105073, )<br>)<br>  --and-- )<br>)<br>ALL PETROLEUM-PRODUCT CARGO )<br>ABOARD THE LUNA WITH )<br>INTERNATIONAL MARITIME )<br>ORGANIZATION NUMBER 9208100, )<br>)<br>Defendants. )<br>) | Civil A. No. 20-1791<br><br><br><br>**UNDER SEAL** |

**DECLARATION**

I, Gene Patton, declare and state:

1.     My name is Gene Patton and I am Chief in the Program Operations Unit for the Department of Justice, Criminal Division. I have been in this position for 10 years. My duties

1

include supervision and oversight of complex forfeiture matters. I declare the matters stated herein based on personal knowledge.

2. As part of my official duties, I have overseen the management and sale of complex assets, including aircrafts and vessels.

3. From prior experience, I know that aircrafts and vessels pose unique challenges in asset management. These assets have maintenance and storage costs that far outstrip standard assets. The larger assets in these categories are particularly challenging to maintain, as crews may need to be retained for around the clock servicing, and only limited locations can store such items.

4. For these reasons, among others, the Department of Justice official position is that "[p]re-forfeiture sale of property (e.g., interlocutory or stipulated sale) is favored as a means of preserving asset value and mitigating asset expenses." *See* U.S. Department of Justice Asset Forfeiture Policy Manual, pg. 146, available at https://www.justice.gov/criminal-afmls/file/839521/download, pg 146.

5. I have managed numerous such sales for other complex assets, and have found such sales to be an effective means of preserving the value of seized assets.

6. I have personally overseen the seizure of all petroleum-product cargo aboard: the Bella with International Maritime Organization ("IMO") number 9208124 ("Defendant Property 1"), the Bering with IMO number 9149225 ("Defendant Property 2"), the Pandi with IMO 9105073

("Defendant Property 3"), and the Luna with IMO number 9208100 ("Defendant Property 4") (collectively, the "Defendant Properties"), and managed the logistics of such seizures.

7. The Defendant Properties are currently in transit to the United States.

8. The Defendant Properties should arrive into a port in the United States by mid-September.

9. Once in the United States, the Defendant Properties will either be placed in storage or will remain on the transit vessels if storage options are unavailable, pending resolution of the instant matter.

10. I have been notified that storage containers for the Defendant Properties may not be available due to weather conditions at the relevant port as well as an overall lack of available storage units. Storage on the transit vessels is thus a likely scenario, which will incur premium costs that will likely exceed the storage costs described below.

11. I have consulted with numerous companies about the costs associated with storing and maintaining the Defendant Properties. Such consultations have revealed that daily storage costs for the Defendant Properties will quickly make a substantial dent in their value. Specifically:

    a. The Defendant Properties are valued between $11,500,000 and $40,000,000, depending on the quality of the gasoline and the frequently changing price for gasoline;

    b. Daily storage costs for the Defendant Properties will be approximately $38,000 a day or $1,140,000 per month; and

      c. Demurrage costs will be approximately $670,000 for both incoming transit vessels, assuming that at least 10 days of demurrage will occur, which is expected to occur.

12. I have consulted with numerous companies interested in purchasing the Defendant Properties pursuant to an interlocutory sales order.

13. Based on the data I have collected and my prior experience in managing similar assets, I have concluded that an interlocutory sale is needed to preserve the value of the Defendant Properties.

14. When I am unable to obtain a fair market value in an interlocutory sale for seized properties, I decline to execute the sale and go forward with the traditional process of storing and maintaining the properties in the custody of the U.S. government.

15. Based on my consultations with interested purchasers, I believe that I will be able to find a buyer who will pay a reasonable fair market price for the Defendant Properties. In fact, one buyer has expressed detailed interest in completing a purchase. However, due to hurricane activity and rapid price fluctuations, the interested buyer has requested an urgent agreement for sale.

16. The net proceeds from any such sale, after payment of fees and expenses, would be held in an interest-bearing account maintained by the government pending the conclusion of the related forfeiture action.

17. Given the attention associated with the Defendant Properties, and the documented threats to other vessels, I further believe that any such sale should occur under seal in order to protect the safety of the individuals involved and ensure the highest possible sales value of the Defendant Properties.

I declare under penalty of perjury that the foregoing is true and correct.

DATED this __27th__ of August 2020, in Washington, DC.

__/s/ Gene Patton__
GENE PATTON
