# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMIBA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALL PETROLEUM-PRODUCT CARGO | ) | |
| ABOARD THE BELLA WITH | ) | Civ. No. 20-cv-01791 (JEB) |
| INTERNATIONAL MARITIME | ) | |
| ORGANIZATION NUMBER 9208124, et al., | ) | **MEMORANDUM IN** |
| | ) | **SUPPORT OF** |
| Defendants In Rem, and | ) | **MOTION TO DISMISS** |
| | ) | |
| MOBIN INTERNATIONAL LIMITED, | ) | |
| | ) | |
| OMAN FUEL TRADING LTD., and | ) | |
| | ) | |
| SOHAR FUEL TRADING LLC FZC, | ) | |
| | ) | |
| Claimants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF CLAIMANTS MOBIN INTERNATIONAL LIMITED, OMAN FUEL TRADING LTD., AND SOHAR FUEL TRADING LLC FZC'S MOTION TO DISMISS THE VERIFIED COMPLAINT FOR FORFEITURE _IN REM_

## TABLE OF CONTENTS

**INTRODUCTION** .................................................................................................................1

**BACKGROUND** ..................................................................................................................2

**STANDARDS OF REVIEW** ...............................................................................................3

**ARGUMENT** ......................................................................................................................5

      I.     THE GOVERNMENT'S VERIFIED COMPLAINT FOR FORFEITURE *IN REM* SHOULD BE DISMISSED BECAUSE THE DEFENDANT PROPERTIES ARE NOT FOREIGN ASSETS OF THE IRGC. ............................................................5

      II.    THE GOVERNMENT'S VERIFIED COMPLAINT FOR FORFEITURE *IN REM* SHOULD BE DISMISSED BECAUSE THE DEFENDANT PROPERTIES DO NOT AFFORD CLAIMANTS A SOURCE OF INFLUENCE OVER THE IRGC. ...........................................................................................................................8

**CONCLUSION** ...............................................................................................................11

# TABLE OF AUTHORTIES

## CASES

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................4, 6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...............................................................................4

*In re 650 Fifth Ave & Related Props.*,
  777 F. Supp. 2d 529 (S.D.N.Y. 2011) ....................................................4, 5

*United States v. Certain Accounts, Together with all Monies on Deposit Therein*,
  795 F. Supp. 391 (S.D. Fla. 1992) ...........................................................5

*United States v. Neff*,
  303 F. Supp. 3d 342 (E.D. Pa. 2018) .....................................................8, 9

*United States v. Oil Tanker – Grace 1 et. al.*,
  Civil Action No. 19-1989 (JEB) (D.D.C. Aug. 7, 2020) ...........................7, 8, 9

*United States v. One Gulfstream G-V Jet Aircraft*,
  941 F. Supp. 2d 1 (D.D.C. 2013) .............................................................4

*United States v. $38,000.00 in United States Currency*,
  816 F.2d 1538 (11th Cir. 1987) ...............................................................5

*United States v. $1,399,313.74 in U.S. Currency*,
  591 F. Supp. 2d 365 (S.D.N.Y. 2008) ................................................5, 6, 10

## STATUTES

18 U.S.C. § 1963.................................................................................8

28 U.S.C. § 2412...............................................................................11

Civil Asset Forfeiture Reform Act of 2000,
  Pub. L. 106-185, 106th Cong. (2000), 114 Stat. 211 (Apr. 25, 2000)...........11

## RULES

Fed. R. Civ. P. R. E..............................................................................4

Fed. R. Civ. P. R. G. .......................................................................4, 5, 8

**OTHER MATERIALS**

12 CHARLES A. WRIGHT & ARTHUR R. MILLER,
FEDERAL PRACTICE AND PROCEDURE CIV. § 3242 (3d ed. 1998) ......................................4

Claimants Mobin International Limited ("Mobin International"), Oman Fuel Trading Ltd. ("Oman Fuel"), and Sohar Fuel Trading LLC FZC ("Sohar Fuel") (collectively, the "Claimants") submit this Memorandum of Law in support of their Motion to Dismiss the Plaintiff's Verified Complaint for Forfeiture *In Rem* (the "Complaint") under Rule 12(b) of the Federal Rules of Civil Procedure and Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

## INTRODUCTION

This matter arises from the Plaintiff's, the United States of America (the "Government"), pursuit of an *in rem* forfeiture action against petroleum-product cargo that was aboard four vessels: the Bella with International Maritime Organization ("IMO") number 9208124 ("Defendant Property 1"), the Bering with IMO number 9149225 ("Defendant Property 2"), the Pandi with IMO 9105073 ("Defendant Property 3"), and the Luna with IMO number 9208100 ("Defendant Property 4") (collectively, the "Defendant Properties"). The Complaint alleges that the Defendant Properties are subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(G)(1) "as foreign assets: (i) of the Islamic Revolutionary Guard Corps ('IRGC'), a designated foreign terrorist organization . . . or (ii) affording a person a source of influence over the IRGC." Verified Complaint, ECF No. 1, at 2. As purchasers, owners, and sellers of the Defendant Properties, Claimants maintain bona fide respective interests in the seized petroleum-product cargo.

The Government's Complaint alleges that the petroleum-product cargo at issue was en route aboard the four ships from Iran and destined for Venezuela. *Id*. Specifically, the Government claims that an individual it alleges to have done business with the IRGC in the past arranged shipment of the Defendant Properties on behalf of Mobin International. *Id*. at 5. The Complaint concludes that the Defendant Properties are subject to forfeiture due to such alleged but

unsupported connections either as foreign assets of the IRGC or because the Defendant Properties provide Claimants a source of influence over the IRGC. *Id*. at 11.

The Complaint, however, does not allege facts linking the Defendant Properties to the IRGC. Rather, it makes conclusory allegations based on purported *prior* dealings and associations between Mobin International and the IRGC to insinuate that *these particular* Defendant Properties are actually IRGC assets or that *these particular* Defendant Properties provide Claimants a source of influence over the IRGC. *Id*. at 2, 5. Neither theory can be correct because these particular Defendant Properties and the related transactions have no connection whatsoever to the IRGC. Regardless, the Government does not even attempt to show such a connection with respect to the Defendant Properties, but instead describes only activity alleged to have previously occurred between non-sanctioned individuals and entities—i.e., Mahmoud Madanipour and Mobin International, respectively—and the IRGC.

## BACKGROUND

According to the Complaint, Mahmoud Mandanipour "was the Iran-based individual who arranged shipments of the Defendant Properties on behalf of Mobin International." *Id*. at 5. The Complaint additionally alleges that "Mandanipour, through Mobin International, works closely with [the National Iranian Oil Company ("NIOC")] and entities associated with NIOC and the IRGC." *Id*. at 6. Specifically, the Complaint alleges that the four petroleum tankers at issue here, the Bella, the Bering, the Pandi, and the Luna, were contracted by Mobin International to transport Iranian gasoline to Venezuela and that "Mobin International selected Seawaves Shipping, an Iranian company, to act as its agent." *Id*. at 8. Further, the Complaint alleges that Seawaves Shipping is associated with the Iran's Islamic Revolutionary Guard Corps-Qods Force ("IRGC-QF"). *Id*.

2

The four Defendant Properties are described by the Government as follows:

1.      "On or about April 18, 2020, the Bella set sail with Defendant Property 1 on board. The certificate of origin and bill of lading for Defendant Property 1 falsely show UAE origin cargo. The documents accurately reflect the charter party as Mobin International. Defendant Property 1 is approximately 302,502 barrels currently on board the Bella, which property was ultimately destined for Venezuela." *Id*. at 10.

2.      "On or about April 14, 2020, the Bering entered into an agreement to transport Iranian gasoline for Mobin International. The Bering subsequently on boarded Defendant Property 2 via a ship-to-ship transfer. Defendant Property 2 is approximately 302,522 barrels currently on board the Bering, which property was ultimately destined for Venezuela." *Id*.

3.      "On or about May 11, 2020, the Pandi entered into an agreement to transport Iranian gasoline for Mobin International. The Pandi subsequently on boarded Defendant Property 3 via a ship-to-ship transfer. Defendant Property 3 is approximately 298,484 barrels currently on board the Pandi, which property was ultimately destined for Venezuela." *Id*.

4.      "On or about April 14, 2020, the Luna entered into an agreement to transport Iranian gasoline for Mobin International. The Luna subsequently on boarded Defendant Property 4 via two ship-to-ship transfers. Defendant Property 4 is approximately 259,700 barrels currently on board the Luna, which property was ultimately destined for Venezuela." *Id*.

## STANDARDS OF REVIEW

To survive a motion to dismiss, the Government's claims must meet the standard pleading requirements of Federal Rule of Civil Procedure 12(b)(6). Specifically, the Complaint must plead

"sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (internal citations omitted). A plaintiff's factual allegations must "be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint "that offers labels and conclusions" and "naked assertions devoid of further factual enhancement" does not suffice. *Iqbal*, 556 U.S. at 678 (internal citations omitted). Rather, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679. If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]— that the pleader is entitled to relief." *Id*. (internal quotation marks omitted).

A motion to dismiss an *in rem* forfeiture action is also governed by the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules"). *In re 650 Fifth Ave & Related Props.*, 777 F. Supp. 2d 529, 541 (S.D.N.Y. 2011); Fed. R. Civ. P. Supp. R. E(1), G(1). Supplemental Rule G(2)(f) accordingly requires that the Government "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Fed. R. Civ. P. Supp. R. G(2)(f). Supplemental Rule G imposes a more exacting pleading standard with a heightened particularity requirement designed to guard against the improper use of seizure proceedings and to protect against seizure upon conclusory allegations. *United States v. One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d 1, 14 (D.D.C. 2013); *see also* 12 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE CIV. § 3242 (3d ed. 1998) (explaining that the Supplemental Rules require a more particularized complaint than is generally demanded in civil actions because of the drastic nature of forfeiture remedies).

While an ordinary complaint can survive a motion to dismiss if its allegations show that entitlement to the demanded relief is plausible, a complaint seeking forfeiture can only survive if

it is reasonable to believe that the Government will prevail at trial. *See* Fed. R. Civ. P. Supp. R. G(2)(f); *see also In re 650 Fifth Ave.*, 777 F. Supp. 2d at 542 (explaining that civil forfeiture complaint must surpass ordinary pleading standards); *see also United States v. $1,399,313.74 in U.S. Currency*, 591 F. Supp. 2d 365, 374, 376 (S.D.N.Y. 2008) (noting that the conclusion that funds were subject to forfeiture "may in fact be true," but dismissing the Government's complaint as insufficiently pleaded; "[a] complaint devoid of any facts to support its bare allegations and consisting solely of speculative assertions and innuendo cannot stand"). The Government "may not seize and continue to hold property upon conclusory allegations that the defendant property is forfeitable." *United States v. Certain Accounts, Together with all Monies on Deposit Therein*, 795 F. Supp. 391, 394 (S.D. Fla. 1992) (citing *United States v. $38,000.00 in United States Currency*, 816 F.2d 1538, 1548 (11th Cir. 1987)).

## ARGUMENT

I. **THE GOVERNMENT'S VERIFIED COMPLAINT FOR FORFEITURE *IN REM* SHOULD BE DISMISSED BECAUSE THE DEFENDANT PROPERTIES ARE NOT FOREIGN ASSETS OF THE IRGC.**

The Government's forfeiture theory in this matter relies upon a series of unfounded assumptions that purport to connect Mahmoud Madanipour and Mobin International to the IRGC. Based on those allegations, the Government then further insinuates, without any factual support, that the Defendant Properties are connected to the IRGC. The Government does not, however, allege any facts showing that the Defendant Properties are foreign assets of the IRGC under 18 U.S.C. § 981(a)(1)(G)(1).

As explained, a motion to dismiss under Rule 12(b)(6) requires that the Government plead facts in its Complaint sufficient to raise its right to relief above the speculative level, *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555, and a complaint "that offers labels and conclusions" and "naked

assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 556 U.S. at 678 (internal citations omitted). Applying those standards, the Government's Complaint here does not suffice.

The Complaint begins by describing in general the importance of petroleum to the IRGC in Section A. Verified Complaint, ECF No. 1, at 2. According to the Government, profits from the Iranian petroleum industry "support the IRGC's full range of nefarious activities, including the proliferation of weapons of mass destruction and their means of delivery, support for terrorism, and a variety of human rights abuses, at home and abroad." *Id*. at 5. Next, in Section B, the Complaint purports to provide "background" by alleging that "Madanipour is affiliated with the IRGC" and that Mobin International "is associated with bank accounts also used for IRGC funds." *Id*. at 5-6. The Complaint further alleges that Madanipour "arranged the shipments of the Defendant Properties on behalf of Mobin International." *Id*. at 5.

None of these background allegations, however, support or even address the Government's summary conclusion that the Defendant Properties are foreign assets of the IRGC, and therefore subject to forfeiture. Instead of providing appropriate context in support of factual allegations, the Government's background information is used to insinuate connections in the absence of facts. *See United States v. $1,399,313.74 in U.S. Currency*, 591 F. Supp. 2d at 374, 376. The questions relevant to the Government's claim are whether the Defendant Properties are foreign assets of the IRGC or whether they afford Claimants a source of influence over the IRGC. The Government does not plead sufficient facts to survive a motion to dismiss under either theory.

Regarding the voyage at issue in this matter, Section C of the Complaint alleges that the Bella, Bering, Pandi, and Luna were contracted by Mobin International to transport the Defendant Properties, and that Mobin International selected Seawaves Shipping, a company allegedly associated with the IRGC-QF, to act as its agent. Verified Complaint, ECF No. 1, at 8. Further, the

Complaint alleges that "Company 1 requested that the owner of the Pandi carry gasoline from Iran to the UAE" and that "[o]n or about February 27, 2020, Company 1 invoiced a company called The Avantgarde Group for a $14.9 million cash payment for the sale of gasoline aboard the Pandi." *Id*. at 8-9. Finally, the Complaint implies that The Avantgarde Group is connected to the IRGC by listing other transactions where there allegedly was IRGC involvement. *Id*. at 9.

    None of these allegations, however, explain in any way *how* the Defendant Properties are purportedly foreign assets of the IRGC. The Government alleges no facts showing that the parties in this matter have been identified or designated as IRGC entities. By contrast, in a related matter also involving property alleged to be associated with the IRGC, *United States of America v. Oil Tanker – Grace 1 et. al*., two defendant properties, an oil tanker and 2.1 million barrels of crude oil, were subject to forfeiture because they "belonged to the IRGC." Civil Action No. 19-1989 (JEB) at *3 (D.D.C. Aug. 7, 2020). The IRGC even publicly admitted that fact. *Id*. Moreover, in that matter, the U.S. Government had *prior* to the seizure of those defendant properties affirmatively identified them as "blocked properties[] because of their nexus to IRGC-[Qods Force]." *Id.* While those facts supported civil forfeiture in that case, the Government in the instant matter has not alleged fact showing that the Defendant Properties are assets of the IRGC.

    Although the Complaint describes how petroleum is an important asset to the IRGC and implies that Madanipour and Mobin International have previously had dealings or connections with the IRGC, nowhere does the Government explain how the Defendant Properties are assets of the IRGC. Even assuming the truth of the Government's allegations, it cannot be the case that that if a party has previously dealt with the IRGC, that every transaction the party undertakes thereafter presumptively involves assets of the IRGC. That is, however, the Government's theory in this case. The Government attempts to connect the Defendant Properties to the IRGC based on speculative

assertions and insinuations that Madanipour and Mobin International have dealt with the IRGC in the past, and therefore, by extension, every transaction they carry out must necessarily involve the IRGC. Such conclusory allegations are not only illogical, they also do not support the Government's claim that the Defendant Properties are foreign assets of the IRGC, nor that Madanipour and Mobin International were dealing with the IRGC with respect to the Defendant Properties. Accordingly, they cannot survive a motion to dismiss under Rule 12(b)(6) nor Rule G's requirement that a complaint "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Fed. R. Civ. P. G(2)(f).

## II.    THE GOVERNMENT'S VERIFIED COMPLAINT FOR FORFEITURE *IN REM* SHOULD BE DISMISSED BECAUSE THE DEFENDANT PROPERTIES DO NOT AFFORD CLAIMANTS A SOURCE OF INFLUENCE OVER THE IRGC.

Despite the lack of case law interpreting what constitutes a "source of influence" as the term is used in 18 U.S.C. § 981(a)(1)(G)(i), this Court's opinion in *United States of America v. Oil Tanker – Grace 1 et. al.* is instructive. Civil Action No. 19-1989 (JEB) (D.D.C. Aug. 7, 2020). In that matter, this Court interpreted "source of influence over" by analogy to the similar language contained in the Racketeer Influenced and Corrupt Organizations Act ("RICO") forfeiture statute. *Id.* at *10; 18 U.S.C. § 1963(a)(2)(D). The Court reasoned that in the RICO context, "courts look to whether the property was 'used to further the affairs of the enterprise' or 'made the prohibited conduct less difficult.'" *United States of America v. Oil Tanker – Grace 1 et. al.*, Civil Action No. 19-1989 (JEB), at *10 (citing *United States v. Neff*, 303 F. Supp. 3d 342, 349 (E.D. Pa. 2018). In the instant matter, however, the Government has not alleged sufficient facts to show that the Defendant Properties were used to further the affairs of the IRGC nor that they made any prohibited conduct less difficult.

In *United States of America v. Oil Tanker – Grace 1 et. al.*, the Government similarly alleged that the defendant properties were foreign assets of or sources of influence for the IRGC. Civil Action No. 19-1989 at *1. In that matter, however, the U.S. Government affirmatively identified defendant properties one and two as blocked subject to U.S. sanctions after the IRGC publicly admitted that the properties belonged to the IRGC and after the properties had been detained by Gibraltarian authorities. *Id*. at *3. The third defendant property in that matter, two wire transfers, were blocked by the U.S. Government as they transited through the United States via a correspondent bank account. *Id*.

Here, there have been no such determinations by the Government, nor does the Government allege that the transactions involve the United States in any way. The Government's allegations in this case show only that transactions were conducted between foreign, non-U.S. sanctioned parties, that do not involve any property blocked pursuant to U.S. law. In *United States of America v. Oil Tanker – Grace 1 et. al.*, this Court explained that to determine whether a party is a source of influence over an entity or organization, courts look to whether the party made prohibited conduct less difficult. Civil Action No. 19-1989 (JEB), at *10 (citing *United States v. Neff*, 303 F. Supp. 3d at 349). In the instant matter however, the U.S. Government has not identified or shown the Claimants, Madanipour, or the Defendant Properties to be subject to sanctions under U.S. law, and therefore there is no prohibited conduct. Instead, the Government relies on its conclusory allegations alone in seeking forfeiture of the Defendant Properties.

Unlike in *United States of America v. Oil Tanker – Grace 1 et. al.*, where the defendant properties had been identified and blocked by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") for connection to the IRGC, here, there is no blocked property involved. Accordingly, no U.S. laws prohibiting dealings with the United States or U.S. persons with respect

to the Defendant Properties are implicated by the Government's allegations. Instead, the Government in this case seeks to forfeit Defendant Properties that were traded between foreign entities and countries with no connection to the IRGC and that were not in violation of any U.S. law. By its logic—in contrast to that in *United States of America v. Oil Tanker – Grace 1 et. al.*— the Government could seize property anywhere in the world from any party it alleges to have had previously dealt with the IRGC.

Rather than pleading facts showing that the Defendant Properties were "used to further the affairs of the enterprise" or "made the prohibited conduct less difficult" as a source of influence over the IRGC, the Government relies on speculative assertions and insinuations to seek forfeiture of the Defendant Properties. In other words, the Government tries to support its claim by alleging that Madanipour and Mobin International have previously had connections or dealings with the IRGC, and that their present dealings with the Defendant Properties must therefore be for the benefit of IRGC. Such conclusory allegations cannot survive a motion to dismiss, as the Government's Complaint for forfeiture must sufficiently plead facts so as not to consist solely of speculative assertions and innuendo. *United States v. $1,399,313.74 in U.S. Currency*, 591 F. Supp. 2d at 374, 376.

Simply put, the Government does not and cannot adequately plead facts showing that the Defendant Properties are foreign assets of the IRGC, nor that the Defendant Properties provide Claimants a source of influence over the IRGC. This is because the Complaint only alleges petroleum transactions between foreign, non-U.S. sanctioned parties that do not involve any property blocked pursuant to U.S. law. Accordingly, there is no basis for the continued detention of the Defendant Properties, and they should be immediately returned to Claimants.

10

**CONCLUSION**

WHEREFORE, Claimants respectfully request that the Court enter an order: (1) dismissing the Government's claim for forfeiture *in rem* against the Defendant Properties under Rule 12(b)(6) for failure to state a claim; (2) awarding costs and attorneys' fees pursuant to the Civil Asset Forfeiture Reform Act of 2000, Pub. L. 106-185, 106th Cong. (2000), 114 Stat. 211 (Apr. 25, 2000), and the Equal Access to Justice Act, 28 U.S.C. § 2412; and (3) for such other relief as the Court deems just and appropriate.

Dated:  September 22, 2020

Respectfully submitted,

<u>Erich C. Ferrari, Esq.</u>
Ferrari & Associates, P.C.
1455 Pennsylvania Ave., NW
Suite 400
Washington, D.C. 20004
Telephone: (202) 280-6370
Fax: (877) 448-4885
Email: ferrari@falawpc.com
DC Bar No. 978253

*Attorney for Claimants*