**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**ALL PETROLEUM-PRODUCT CARGO ABOARD THE BELLA WITH INTERNATIONAL MARITIME ORGANIZATION NUMBER 9208124, *et al.*,**<br><br>**Defendants In Rem.** | **Civil Action No. 20-1791 (JEB)** |

**MEMORANDUM OPINION**

Having seized several ships bearing allegedly contraband Iranian petroleum products, the United States brought this forfeiture action *in rem*. Defendants are four separate properties: (1) All petroleum-product cargo aboard the Bella with International Maritime Organization number 9208124 (Defendant Property 1); (2) All petroleum-product cargo aboard the Bering with IMO number 9149225 (Defendant Property 2); (3) All petroleum-product cargo aboard the Pandi with IMO number 9105073 (Defendant Property 3); and (4) All petroleum-product cargo aboard the Luna with IMO number 9208100 (Defendant Property 4). The Government alleges that the Defendant Properties are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(G)(i) because they provided certain persons a source of influence over the Islamic Revolutionary Guard Corps (IRGC), a designated foreign terrorist organization. As the only known potential claimants have failed to prosecute their claims, and no one else has claimed an interest or otherwise defended the action, the Clerk of Court entered a default on April 29, 2021. See ECF No. 29 (Clerk's Entry of Default). Plaintiff has now moved for default judgment pursuant to Federal Rule of

Civil Procedure 55(b)(2). As the United States has sufficiently demonstrated that the allegations in its Complaint warrant such judgment, the Court will grant the Motion.

## I. Background

Given the default in this case, the Court accepts the facts alleged in the Government's Complaint as true. The IRGC "'is a non-traditional instrumentality of Iran,' serving as 'the military arm of a kind of shadow government answering directly to the Ayatollah and the mullahs who hold power in Iran.'" Christie v. Islamic Republic of Iran, No. 19-1289, 2020 WL 3606273, at *3 (D.D.C. July 2, 2020) (quoting Blais v. Islamic Republic of Iran, 459 F. Supp. 2d 40, 47 (D.D.C. 2006)). In 2019, both the President and the Secretary of State designated the IRGC a Foreign Terrorist Organization. See ECF No. 32-1 (Pl. Mot. for DJ) at 4.

The Government contends that Iran's petroleum and petrochemical industries provide "major sources of revenue for the Iranian regime and fund its malign activities throughout the Middle East." Id. at 5 (citations omitted). Reflecting the link between these industries and the IRGC, the Department of Treasury's Office of Foreign Assets Control, charged with administering and enforcing economic and trade sanctions, described the National Iranian Oil Company (NIOC) as "an agent or affiliate of the IRGC." Id. OFAC concluded that "[i]n spring 2019 alone, this IRGC-QF [Quds Force]-led network employed more than a dozen vessels to transport nearly 10 million barrels of crude oil," which, taken collectively, "sold for more than half a billion dollars." Id. at 3 (citations omitted).

In January 2020, "Company 1," a "U.A.E.-based trading company," allegedly "requested that the owner of [a vessel named] the Pandi carry gasoline from Iran to the U.A.E." Id. at 8. The Government contends that the request was made on behalf of the National Iranian Oil Products Distribution Company (NIOPDC), a subsidiary of the NIOC. Id. Near the end of

February 2020, Company 1 invoiced the Avantgarde Group for the sale of the gasoline, requesting a $14.9 million cash payment. Id. The Avantgarde Group has connections to the IRGC and "has received payments from Mohammad Saeed Al Aqili and the Al Aqili Group." Id. Both Al Aqili and the Al Aqili Group were designated by OFAC in 2014 for assisting the Iranian regime in selling oil in evasion of U.S. trade and economic sanctions. Id. at 7.

The Government alleges that Mahmoud Madanipour, "an Iranian national . . . affiliated with the IRGC," id. at 6, acted as Company 1's representative in arranging the Pandi shipment. See ECF No. 4-1 (Thomas Tamsi Aff.) at 9. Madanipour later altered shipping documents, substituting a different company, Mobin International Ltd., in place of Company 1 as the party responsible for the shipment. See Pl. Mot. for DJ at 8. A bill of lading onboard the Pandi, however, "indicated that the shipper was NIOC and listed the consignee as 'To Order of Shipper (NIOPDC) Account of Mobin International Ltd.'" Id. Mobin International was "purportedly organized in the United Arab Emirates," but it "previously operated under the name Rahbaran Petro Mobin Kish and described itself as an Iranian petroleum company." Id. at 6. Given the events of this case, OFAC designated Mobin International as having acted "in support of the NIOPDC" in October 2020. Id. at 7. OFAC designated Madanipour pursuant to Executive Order 13,224 for his affiliation with Mobin International. Id.

According to the Government, Madanipour, now acting through Mobin International, proceeded to arrange transport of the Defendant Properties aboard the Pandi, the Bella, the Bering, and the Luna. Id. at 8. Satellite images reveal that "the Pandi visited the Sirus Oil Terminal in Iran" in March 2020. Id. at 9. Images show that, in mid-April, "the Pandi engaged in a ship-to-ship transfer" of "approximately 302,502 barrels" to the Bella. Id. Those barrels constitute Defendant Property 1. Id. Around the same time, the Bering and the Luna each

agreed to carry shipments of Iranian gasoline for Mobin International. Id. Barrels were subsequently loaded onto those vessels through similar ship-to-ship transfers. Id. The approximately 302,522 barrels on board the Bering constitute Defendant Property 2, and the approximately 259,700 barrels on board the Luna constitute Defendant Property 4. Id. The Pandi again agreed to carry gasoline for Mobin International in mid-May. Id. The approximately 298,484 barrels loaded to the Pandi via another ship-to-ship transfer constitute Defendant Property 3. Id. All barrels were "ultimately destined for Venezuela." Id.

The Government requested a warrant to seize the Defendant Properties on July 1, 2020. See ECF No. 4 (Pl. Mot. for Issuance of Warrant of Arrest); see also Tamsi Aff. at 9 (citing intelligence from "confidential reliable source" linking shipments to IRGC). Finding probable cause, this Court issued the warrant on the following day. See ECF No. 5 (Notice of Issuance of Arrest Warrant). The Government publicly announced that it had seized Defendant Properties on August 14, 2020. See ECF No. 9 (Pl. Mot. for Interlocutory Sale) at 2.

Mobin International, along with two other related entities (collectively, Mobin Claimants), filed a joint claim for the Defendant Properties on September 1, 2020. See ECF No. 11 (Verified Claim). They subsequently failed to prosecute their claim, however, and the Clerk of Court entered default against the Defendant Properties on April 29, 2021. See Entry of Default.

The Government now moves for default judgment and seeks forfeiture of Defendant Properties.

## II. Legal Standard

"The determination of whether a default judgment is appropriate is 'committed to the sound discretion of the trial court.'" Lu v. Lezell, No. 11-1815, 2013 WL 12183952, at *1

(D.D.C. July 19, 2013) (quoting Jackson v. Beech, 636 F.2d 831, 835 (D.C. Cir. 1980)). A court may enter default judgment when the "party against whom a judgment . . . is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). "This form of relief is no less appropriate when the defendant in question is property," and, "unless a claimant properly intervenes to raise defenses to its forfeiture, the defendant property is deemed to have 'failed to plead or otherwise defend' against the allegations, and the Clerk of Court must enter default." United States v. All Assets Held in Account Number XXXXXXXX, 330 F. Supp. 3d 150, 156 (D.D.C. 2018) (quoting Fed. R. Civ. P. 55(a)).

Once default is entered, the defendant "is deemed to admit every well-pleaded allegation in the complaint." Adkins v. Teseo, 180 F. Supp. 2d 15, 17 (D.D.C. 2001); see Trans World Airlines, Inc. v. Hughes, 449 F.2d 51, 63 (2d Cir. 1971), rev'd on other grounds sub nom. Hughes Tool Co. v. Trans World Airlines, Inc., 409 U.S. 363 (1973); see also 10A Wright & Miller, Fed. Prac. & Proc. Civ. § 2688.1 (4th ed. 2021) (defaulting "defendant has no further standing to contest the factual allegations of plaintiff's claim for relief"). Nevertheless, "[m]odern courts are . . . reluctant to enter and enforce judgments unwarranted by the facts," Jackson, 636 F.2d at 835, and "a district court may still deny an application for default judgment where the allegations of the complaint, even if true, are legally insufficient to make out a claim." Gutierrez v. Berg Contracting, Inc., No. 99-3044, 2000 WL 331721, at *2 (D.D.C. Mar. 20, 2000); see also United States v. $1,0171,251.44 of Funds Associated with Mingzheng Int'l Trading Ltd., 324 F. Supp. 3d 38, 45 (D.D.C. 2018) ("[T]he defendant['s] default notwithstanding, the plaintiff is entitled to a default judgement only if the complaint states a claim for relief.") (second alteration in original) (quoting Jackson v. Corr. Corp. of Am., 564 F. Supp. 2d 22, 26–27 (D.D.C. 2008)).

## III. Analysis

Before looking at the allegations in the Complaint, the Court examines its jurisdiction and the sufficiency of notice to potential claimants.

### A. Jurisdiction

As a threshold matter, this Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1355(a), which provides that district courts "have original jurisdiction . . . of any action or proceeding for . . . forfeiture, pecuniary or otherwise, incurred under any Act of Congress." It also has jurisdiction under 28 U.S.C. § 1345, which provides the district courts with jurisdiction over proceedings commenced by the United States.

This Court thus has *in rem* jurisdiction to issue a forfeiture order, and this holds true regardless of "[w]hether or not [the] foreign government will ultimately choose to comply." United States v. One Gulfstream G-V Jet Aircraft, 941 F. Supp. 2d 1, 7 (D.D.C. 2013); see also United States v. All Assets Held at Bank Julius Baer & Co., Ltd., 772 F. Supp. 2d 205, 211 (D.D.C. 2011).

### B. Notice

A forfeiture action *in rem* arising from a federal statute is governed by Supplemental Rule G of the Federal Rules of Civil Procedure. Rule G(4)(a)(i) states that "[a] judgment of forfeiture may be entered only if the government has published notice of the action within a reasonable time after filing the complaint or at a time the court orders." The Government fulfilled this obligation by posting timely notice on an official government forfeiture website, www.forfeiture.gov, for at least 30 consecutive days, as required by Supplemental Rule G(4)(a)(iv)(C). See Pl. Mot. for DJ at 11, 15.

Plaintiff was also required to provide direct notice "to any person who reasonably appear[ed] to be a potential claimant on the facts known to [it]" and to send such notice "by means reasonably calculated to reach the potential claimant." Fed. R. Civ. P. Supp. R. G(4)(b)(i), (iii)(A). The Government met this requirement by sending notices of the action and copies of the complaint to Mobin International and Mahmoud Madanipour via email on July 28, 2020. See Pl. Mot. for DJ at 16. The Government also sent notice of the action and a copy of the complaint to Madanipour thorough the WhatsApp instant messaging service on August 1, 2020, and confirmed that the message had been read. Id. The Government's efforts were evidently successful because the Mobin Claimants filed a claim for Defendant Properties on September 1, 2020. See Verified Claim. "A potential claimant who had actual notice of a forfeiture action may not oppose or seek relief from forfeiture because of the government's failure to send the required notice." Fed. R. Civ. P. Supp. R. G(4)(b)(v).

With the procedural requirements met, the Court may cruise ahead to the substance of Plaintiff's claims.

C. Merits

Supplemental Rule G also requires that the Complaint "identify the statute under which the forfeiture action is brought" and "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Fed. R. Civ. P. Supp. R. G(2)(e)–(f). The Court checks first to see whether this forfeiture action adequately "aris[es] from a federal statute" — here identified by Plaintiff as 18 U.S.C. § 981. See Fed. R. Civ. P. Supp. R. G(1). It next determines whether the Government has stated sufficient facts.

1. *Federal Statute*

Plaintiff brings this action under the Civil Forfeiture section of Title 18, Crimes and Criminal Procedure. Specifically, it claims that Defendant Properties are subject to forfeiture under 18 U.S.C. § 981(a)(1)(G)(i), which permits forfeiture of "all assets, foreign or domestic, affording any person a source of influence over" "any individual, entity, or organization engaged in planning or perpetrating any . . . Federal crime of terrorism . . . against the United States, citizens or residents of the United States, or their property."

As a threshold matter, Plaintiff must establish that the IRGC is subject to this provision. The Government posits that because the Secretary of State designated the IRGC as a Foreign Terrorist Organization, it is covered by this provision "automatically" because the Secretary's designation "necessarily" means that the IRGC is "engaged in planning or perpetrating" a "Federal crime of terrorism." Pl. Mot. for DJ at 18–19; see also 18 U.S.C. § 981(a)(1)(G)(i); 8 U.S.C. § 1189(a)(1)(B) (requiring Secretary to find that "organization engages in terrorist activity, or retains the capability and intent to engage in terrorist activity or terrorism," to designate it as foreign terrorist organization) (internal citations omitted). It also points out that OFAC "designated both the IRGC and the IRGC-QF under E.O. 13,224, which is aimed at freezing the assets of terrorists and their supporters," further demonstrating that the IRGC is engaged in terrorism. See Pl. Mot. for DJ at 19 (internal quotation marks and citation omitted). The Government's argument is anchored in expert determinations and supported by a recent decision of this Court. See United States v. Oil Tanker Bearing Int'l Mar. Org. (IMO) No. 9116512, 480 F. Supp. 3d 39, 45 (D.D.C. 2020) (deferring to designations made by Secretary of State and OFAC in similar circumstances). The Court agrees that, at least in this instance, it is

appropriate to defer to the Secretary of State's and OFAC's findings that the IRGC is engaged in terrorist activity and is therefore subject to 18 U.S.C. § 981(a)(1)(G)(i).

The Government must next show that Defendant Properties afford a "person" a "source of influence over" the IRGC. See 18 U.S.C. § 981(a)(1)(G)(i). It alleges here that the Properties gave Madanipour and Mobin influence over the IRGC because the terrorist group relies on cash from the illicit sales of Iranian petroleum. See ECF No. 33 (Pl. Suppl. Mem.) at 3. Indeed, the profits from Iran's oil industry are its "financial lifeline." Pl. Mot. for DJ at 20. As the United States has targeted that industry with strict sanctions, the IRGC depends on "persons embedded in the shipping industry" like Madanipour and "front companies" like Mobin to keep funding flowing to its terrorist operations. See Pl. Suppl. Mem. at 3; see also Pl. Mot. for DJ at 3. The Court concludes, as a result, that Defendant Properties likely afforded Madanipour and Mobin a source of influence over the IRGC because those properties were critical to furthering the affairs of the terrorist group's enterprise. Cf. United States v. Neff, 303 F. Supp. 3d 342, 349 (E.D. Pa. 2018) (in RICO-based forfeitures, which also use "source of influence over" language, courts look to whether property was "used to further the affairs of the enterprise"). The Government thus properly brought this action for forfeiture against under 18 U.S.C. § 981(a)(1)(G)(i).

2. *Reasonable Belief*

The next question is whether the Complaint alleges facts sufficient to support "a reasonable belief that the government could prove by a preponderance of the evidence that these [properties] were subject to civil *in rem* forfeiture, as required by Fed. R. Civ. P. Supp. R. G(2)(f)." $1,071,251.44 of Funds, 324 F. Supp. 3d at 41. Plaintiff argues that "the complaint alleges sufficiently detailed facts to support a reasonable belief that the United States would be able to establish at trial" that the IRGC "has engaged in planning and perpetrating federal crimes

of terrorism as defined in 18 U.S.C. § 2332b(g)(5)," and "that the Defendant Properties grant [a person] a source of influence over the IRGC." Pl. Mot. for DJ at 17. Specifically, the Government explains:

> The United States . . . alleged facts sufficient to demonstrate that the sales of the Defendant Properties were controlled by the IRGC, and thus part of the terror group's "financial lifeline." Specifically, the United States alleged, among other things, that Mahmoud Madanipour arranged to ship the Defendant Properties on behalf of Mobin International, Compl. ¶ 15, that Madanipour is affiliated with the IRGC, id., that Mobin International chartered the Bella, Bering, Luna, and Pandi to ship the Defendant Properties, id. ¶¶ 32-35, that Mobin International is associated with bank accounts also used for IRGC funds, id. ¶ 18, that Mobin International retained Seawaves Shipping, an Iranian company that is associated with the IRGC-QF, to act as its agent in transporting the Defendant Properties, id. ¶¶ 25-26, and that a bill of lading for Defendant Property 3 identified NIOC and/or its subsidiary, NIOPDC, as the shipper, id. ¶ 28.

Id. at 20–21. The Court agrees that these allegations are sufficient to support the Government's claim. See Oil Tanker Bearing Int'l Mar. Org. (IMO) No. 9116512, 480 F. Supp. 3d at 46–47 (holding similar allegations sufficient).

Plaintiff puts forth two additional persuasive grounds to find in its favor. First, on October 26, 2020, OFAC "designated Mobin International pursuant to Executive Order 13,224." Pl. Mot. for DJ at 21. That determination is entitled to deference. See In re 650 Fifth Ave., No. 8-10934, 2013 WL 2451067, at *6 (S.D.N.Y. June 6, 2013) ("Given OFAC's unique expertise in matters of terrorist finance and the sensitive nature of the investigations upon which OFAC makes its determinations, it is entitled to deference even greater than that afforded an administrative agency statutory interpretation under Chevron."); see also Consarc Corp. v. Iraqi Ministry, 27 F.3d 695, 702 (D.C. Cir. 1994).

Second, this Court previously found by probable cause that the Defendant Properties were subject to forfeiture. See Notice of Issuance of Arrest Warrant. Plaintiff sensibly contends

that because this finding relied on the same facts as alleged in the Complaint and affidavit in support of the warrant for arrest, this Court should find the same here, particularly given the comparable standard. See Pl. Mot. for DJ at 21; see also Pl. Mot. for Arrest Warrant, ¶ 3 (articulating probable-cause standard as "the government 'must have reasonable grounds to believe that the certain property is subject to forfeiture'") (quoting United States v. Banco Cafetero Panama, 797 F.2d 1154, 1160 (2d Cir. 1986)).

Buoyed by multiple justifications, the Court finds that Plaintiff has met its burden.

## IV. Conclusion

For the foregoing reasons, the Court will grant the Government's Motion for Default Judgment. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: October 1, 2021